RECORD NO. 15-1434

In The

# United States Court of Appeals
## For The Fourth Circuit

# WILLIAM HANBACK,

*Plaintiff – Appellant*,

**v.**

# DRHI, INC.; D.R. HORTON, INC.,

*Defendants – Appellees*.

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

_____

## BRIEF OF APPELLANT

_____

**J. Chapman Petersen**
**Stephen Patrick Pierce**
**SUROVELL ISAACS PETERSEN & LEVY, PLC**
**4010 University Drive, 2nd Floor**
**Fairfax, Virginia 22030**
**(703) 251-5400**

*Counsel for Appellant*

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
## DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of all parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case. In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form. Counsel has a continuing duty to update this information.

No. 15-1434 _____     Caption: William Hanback v. DRHI, Inc. et al. _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

William Hanback _____
(name of party/amicus)

_____

who is _____ appellant _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.    Is party/amicus a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO


2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.  Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?  ☐ YES ☑ NO
    If yes, identify entity and nature of interest:

5.  Is party a trade association? (amici curiae do not complete this question)  ☐ YES ☑ NO
    If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.  Does this case arise out of a bankruptcy proceeding?  ☐ YES ☑ NO
    If yes, identify any trustee and the members of any creditors' committee:

Signature: _Stephen Pierce_                Date: _5/15/2015_

Counsel for: William Hanback

## CERTIFICATE OF SERVICE
**************************

I certify that on ___5/15/2015___ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____          _5/15/2015_
          (signature)                  (date)

# **TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................... iii

JURISDICTIONAL STATEMENT ........................................................1

PARTIES.................................................................................................1

STATEMENT OF THE ISSUES PRESENTED FOR REVIEW ............1

STATEMENT OF THE CASE................................................................2

      Statement of Facts.........................................................................3

SUMMARY OF THE ARGUMENT ......................................................9

ARGUMENT ........................................................................................10

    I.     Standard of Review ..........................................................10

    II.    The District Court Failed to View the Allegations in the Light Most Favorable to Mr. Hanback ........................................11

    III.   The District Court erred when it dismissed Count I for Declaratory Judgment because Mr. Hanback seeks declaratory relief regarding the 2004 decree not the 2000 contract......................15

    IV.   Mr. Hanback's breach of contract claim falls within the statute of limitations..........................................................................20

    V.    Mr. Hanback stated a contract claim upon which relief can be granted ...............................................................................22

CONCLUSION.....................................................................................24

REQUEST FOR ORAL ARGUMENT ................................................25

i

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ..........10, 11, 12, 22

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ...............11, 12, 22

*Brown v. Harms*,
251 Va. 301, 467 S.E.2d 805 (1996) ...........................................................23

*Castillo v. Emergency Medical Associates*,
372 F.3d 643 (4th Cir. 2004) ......................................................................20

*Conley v. Gibson*,
355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957) ...................................11, 15

*Cruz v. Beto*,
405 U.S. 319, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972) ......................... 11-12

*DRHI, Inc. v. Hanback*,
765 S.E.2d 9 (2014) ...............................................................................8, 18

*Eastern Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship*,
213 F.3d 175 (2000) ....................................................................................9

*Erickson v. Pardus*,
551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) .....................11, 15

*Erie Railroad v. Tompkins*,
304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938) .....................................20

*Filak v. George*,
267 Va. 612, 594 S.E.2d 610 (2004) ...........................................................23

*Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*,
    736 F.3d 255 (4th Cir. 2013) ........................................................................16

*Hunter v. Custom Bus. Graphics*,
    635 F. Supp. 2d 420 (E.D. Va. 2009) ..........................................................21

*Jones v. Sears Roebuck & Co.*,
    301 F. App'x 276 (4th Cir. 2008) ..................................................................16

*Jordan v. Alternative Resources Corp.*,
    458 F.3d 332 (2006) ........................................................................................9

*Kersey v. PHH Mortg. Corp.*,
    682 F. Supp. 2d 588 (E.D. Va. 2010) ..........................................................19

*Locke v. Johns-Manville Corp.*,
    221 Va. 951, 275 S.E.2d 900 (1981) ............................................................21

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ...........................17

*Miller v. Brown*,
    462 F.3d 312 (4th Cir. 2006) ........................................................................17

*Mylan Labs., Inc. v. Matkari*,
    7 F.3d 1130 (1993) ........................................................................................15

*Penn-Am. Ins. Co. v. Coffey*,
    368 F.3d 409 (4th Cir. 2004) ........................................................................17

*Republican Party of N.C. v. Martin*,
    980 F.2d 943 (4th Cir. 1992) ..................................................................11, 12

*Scheuer v. Rhodes*,
    416 U.S. 232, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974) .............................11, 15

*Skelly Oil Co. v. Phillips Petroleum*,
    339 U.S. 667, 70 S. Ct. 876, 94 L. Ed. 1194 (1950) .....................................16

*Stevenson v. City of Seat Pleasant*,
2014 U.S. App. LEXIS 3275 (4th Cir. 2014).................................................22

*United States ex rel. Nathan v. Takeda Pharms. N. America, Inc.*,
707 F.3d 451 (2013) .........................................................................................10

*Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*,
386 F.3d 581 (4th Cir. 2004) .................................................................16, 17

*Walker Proc. Equip., Inc. v. Food Mach. & Chem. Corp.*,
382 U.S. 172, 86 S. Ct. 347, 15 L. Ed. 2d 247 (1965) ...................................12

## **STATUTES**

28 U.S.C. § 1332 ...............................................................................................1

28 U.S.C. § 2106 ...............................................................................................1

28 U.S.C. § 2201 .............................................................................................16

28 U.S.C. § 2201(a) ........................................................................................16

Va. Code § 8.01-184 ..................................................................................15, 16

Va. Code § 8.01-230 ..................................................................................20, 21

Va. Code § 8.01-246(2)....................................................................................21

## **RULES**

Fed. R. Civ. P. 8 ................................................................................................9

Fed. R. Civ. P. 8(f) ....................................................................................11, 15

Fed. R. Civ. P. 12(b)(6)..........................................................................*passim*

Fed. R. Civ. P. 57 ...........................................................................................19

## JURISDICTIONAL STATEMENT

This matter was originally filed in the Circuit Court of Fairfax County Virginia.  It was removed by the Defendant/Appellees to the United District Court for the Eastern District of Virginia, which had subject matter jurisdiction under 28 U.S.C. § 1332.  This Court has appellate jurisdiction under 28 U.S.C. § 2106 to affirm, modify, vacate, set aside or reverse the order granting Appellee's Motion to Dismiss, and require such further proceedings as may be just.

## PARTIES

The plaintiff/appellant William Hanback ("Mr. Hanback") is a natural person and resident and domiciliary of the Commonwealth of Virginia.

The defendant/appellee, DRHI, Inc.  ("DRHI"), is a Delaware corporation registered and authorized to conduct business in the Commonwealth of Virginia.

The defendant/appellee, D.R. Horton, Inc. ("D.R. Horton") is a corporation registered and authorized to conduct business in the Commonwealth of Virginia.

## STATEMENT OF THE ISSUES PRESENTED FOR REVIEW

Mr. Hanback hereby presents the following issue on appeal:

1.      Did the District Court err in granting Defendant's Motion to Dismiss by an order dated March 11, 2015?

1

# STATEMENT OF THE CASE

Mr. Hanback originally filed this action in the Fairfax County Circuit Court on December 1, 2014 against Defendants DRHI, INC. (DRHI) and D.R. HORTON, INC. ("D.R. Horton") (collectively, "Horton" or "Defendants") to obtain declaratory relief from the court stating the obligations and rights of the parties under a 2004 decree of the Circuit Court of Fairfax County, Virginia and for breach of contract.  (A8-33).

On December 31, 2014, Horton removed the case to the United District Court for the Eastern District of Virginia, and filed a six page single document entitled "Motion to Dismiss."  (A39-44).  At that time, Horton did not file any additional papers or set the Motion to Dismiss for a hearing.

On January 14, 2015, Mr. Hanback timely filed his Memorandum in Opposition to Defendants' Motion to Dismiss.  (A2 - Dkt # 6).

On January 23, 2015, Defendants untimely filed their Brief in Support of their Motion to Dismiss. (A2 - Dkt # 7).  Defendants then filed an untimely Rebuttal in Support of Their Motion to Dismiss on January 30, 2015.  (A2 - Dkt # 8).

On February 3, 2015, Mr. Hanback filed a motion to strike the untimely memorandum and reply pleadings and have the Court withdraw the motion to dismiss for failure to set it for a hearing.  (A45-46).  On February 10, 2015, the

defendants noticed their motion for a hearing on February 20, 2015, the same day Mr. Hanback had previously noticed a hearing for his motion to strike. (A2 - Dkt # 12). The Court heard argument on the motion to dismiss on February 20, 2015 and gave Mr. Hanback leave to file an additional opposition brief due to the piecemeal and untimely briefing by Horton. (A3 - Dkt # 18).

On February 27, 2015, Mr. Hanback filed his Opposition Brief. On March 4, 2015, Horton filed its [second] reply. (A3 - Dkt # 19).

On March 11, 2015, the District Court (J. Ellis presiding) issued an order finding in favor of Horton on the Motion to Dismiss and dismissed the case with prejudice. (A91). Notably, the District Court denied the Motion to Strike as moot, despite Horton's failure to follow the Eastern District of Virginia's local rules and procedures. Id.

On April 10, 2015 Mr. Hanback timely noticed this appeal. (A92-94).

**<u>Statement of Facts</u>**

This case arises from the continuing failure of Horton to pay amounts due and owing under a 2000 contract and 2004 Court decree ("2004 Decree") entered in consolidated Chancery Nos. 181833 and 178718 ("the Original Action") in Fairfax County. The 2004 Decree specifically required Horton to pay Mr. Hanback additional compensation when his real property, conveyed by that same order, was later subdivided by Defendants for residential housing. In bringing this

3

current action (removed to Federal court), Mr. Hanback sought declaratory relief to determine what obligations, if any, exist under the 2004 decree.  Moreover, the 2000 written contract and amendment include language that require the same type of secondary payment to Mr. Hanback based on future subdivisions.  Mr. Hanback has never received this payment.  Thus, he also pled an alternative theory for Breach of Contract in Count II of the Complaint.

On July 28, 2000, Mr. Hanback entered into a real estate contract ("the 2000 Contract") to sell his property in the City of Fairfax to defendant/appellee DRHI.  That contract – which is the source of this litigation – called for DRHI to pay Hanback $560,000.00 for his parcel which represented 2.14 acres of residentially-zoned land under the expectation of yielding eight (8) residential lots for development.  (A9).

The 2000 Contract was amended on August 28th, 2000.  Under the terms of the amendment, DRHI agreed "the purchase price shall be $70,000 per approved lot with a minimum of six lots.  If only 5 or fewer than 5 lots are approved, the Purchase Price shall be $400,000 for the 2.14 acres." (A9).

On June 5, 2002, having **failed to obtain a rezoning** DRHI nonetheless filed suit to enforce the agreement for the minimum price of $400,000.00, which was $160,000 below the original price.  Mr. Hanback refused to sell the land and argued that the contract between the parties specifically required a

"redevelopment" of the land and that DRHI never provided to him a Notice of Suitability, nor had DRHI sought or obtained a final subdivision approval.

On June 9, 2004, the parties appeared before the Circuit Court of Fairfax County (Honorable Stanley Klein presiding) on DRHI's request for specific performance of the 2000 Contract. Judge Klein entered a decree, which was drafted by Horton's counsel and which required Hanback to "appear at settlement" and sign the necessary documents to convey his property. The decree further protected Hanback's right to additional payment based on the development by DRHI, by requiring DRHI to compensate Hanback in the future as follows:

> … at the time of settlement, DRHI, Inc. shall pay Mr. Hanback $400,000 minus the $10,000 already paid and … **at the time any subdivision plans are submitted by DRHI, Inc.** for the development of the property sold by Mr. Hanback are approved by the City of Fairfax, **in the event that the plans submitted by DRHI, Inc. permit the construction of six or more individual residences, DRHI, Inc. shall pay to Mr. Hanback $70,000.00 for the sixth lot and $70,000.00 for each additional approved lot thereafter."** (A10, 32-33). (emphasis added)

This bifurcated payment schedule was consistent with the 2000 Contract, in which Mr. Hanback's compensation was based on the number of units DRHI could build using his land. The decree was accepted by DRHI, which endorsed it and proceeded to closing. (A10).

DRHI subsequently became the title owners. At that time, Hanback received the remainder of the $400,000.00, which was the first payment of the two

contemplated payments under the contract <u>and</u> judicial decree owed as the purchase price for his land. (A10).

Under Paragraph 23 of the 2000 Contract, the terms and obligations of the Contract continued after the deed transfer and were memorialized by the order of Judge Klein. (A10). Eventually, DRHI conveyed its interest in the Hanback property to defendant D.R. Horton, its wholly-owned subsidiary. (A10-11). DRHI and D.R. Horton share officers, employees, and projects. Essentially, the transfer was from the land buying division of the company to the home building division. Id. Sometime thereafter, DRHI purchased the neighboring property to the Hanback parcel and assigned its rights in the undeveloped property to D.R. Horton. (A11).

In the spring of 2007, D.R. Horton approached the Fairfax City Council with a combined redevelopment request for the property and a neighboring parcel, of approximately 1.9 acres ("neighboring parcel"). (A11). Eventually, the City Council approved a Planned Development,[1] which contemplated the clustering of fifteen (15) new single-family homes on the combined parcels with an open space buffer protecting the a neighboring community. The approval of the new community was specifically based upon proffers by D.R. Horton dedicating Mr.

---

[1] The City's approval of the planned development is not to be confused with the approval of subdivision plans (in which each lot is specifically placed) which happened on January 8, 2010.

Hanback's former land as the open space to support "bonus density" on the remaining land. Without the dedication of the Hanback property, there would have been no authorization for fifteen units; by right, the combined properties could only accommodate ten units. (A11-12)

In late 2009, DRHI filed the relevant subdivision plans with the Fairfax City Council for the combined parcels. (A12, 80). These plans showed specifically the planned location of each subdivided lot and the dedicated open space. Importantly, the **subdivision plan for this Planned Development was approved by the city on January 8, 2010.** (A12). The approval by the City of the subdivision plans vested Mr. Hanback's right to that subsequent payment contemplated by the contract and the 2004 Decree.[2] Until that date, Mr. Hanback had no right to the additional compensation.

Under the approved final subdivision plan, Mr. Hanback's property constituted the entirety of the buffer zone necessary to obtain the bonus density. The remainder of Hanback's property supported 5.5 of the fifteen (15) subdivided lots. In other words, Mr. Hanback's property permitted the Defendants to build 10.5 homes: five on the land and 5.5 via the "bonus." (A12).

---

[2] The 2004 Decree on its face contemplated two separate compensation events: (i) the $400,000 initial payment upon the conveyance of the property, and (ii) the $70,000 "per lot" payment, if and when the **subdivision plans** for the property "permit the construction of six or more individual residences."

Upon discovery of the additional homes and after failing to get relief from the Defendants, Mr. Hanback filed a "show cause" petition with the Circuit Court of Fairfax County to hold DRHI in contempt for violating the 2004 Order. On July 16th, 2013, the Court (Judge R. Smith presiding) issued a written opinion letter finding that defendants owed Mr. Hanback $350,000.00 under the 2004 Decree and directing that it pay the funds forthwith. Subsequent non-payment by defendants led to Judge Smith holding them in contempt and entering judgment on September 20, 2013. (A12-13).

The 2013 judgment and contempt finding was vacated by the Supreme Court of Virginia on October 31, 2014. (A13). The Supreme Court found that "because the June 9, 2004 order did not contain definite terms as to the total amount DRHI was required to pay and when such payment was due, DRHI could not be held in contempt for failing [to] comply with the June 9, 2004 order." *DRHI, Inc. v. Hanback*, 765 S.E.2d 9, 13 (2014). Importantly, the Supreme Court's ruling noted that "[t]he additional amount DRHI might owe to Hanback was left open and was dependent on numerous factors which had not occurred as of June 9, 2004." *Id.*

Notably however, the Supreme Court did not rule on the merits of Mr. Hanback's arguments regarding bonus density or the bifurcated payment, nor did it overturn Judge Smith's factual finding that Mr. Hanback's property permitted the defendants a bonus density of five (5) units for an aggregate value of $350,000.00.

8

The Virginia Supreme Court also did not vacate or otherwise alter the 2004 Decree.[3]  Rather, the Supreme Court overturned the finding of contempt because the parties' obligations under the 2004 decree as it relates to subsequent payments were unclear and thus contempt could not lie.

After the Virginia Supreme Court's ruling the parties were returned to their position *ex ante* and Mr. Hanback brought this current action, in order to have the 2004 decree interpreted, identify which, if any of the "numerous factors which had not occurred as of June 9, 2004," had been triggered, and to clarify what obligations, if any, remain for the parties.

## SUMMARY OF THE ARGUMENT

A motion filed under Rule 12(b)(6) challenges the legal sufficiency of a complaint. *Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 338 (2006).  Such a motion is considered under the assumption that the facts alleged are true. *Eastern Shore Mkts, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (2000).

The legal sufficiency of Mr. Hanback's claims are measured by whether they meet the standards for a pleading stated in Rule 8 (providing general rules of

---

[3] In its opinion, the District Court found that Mr. Hanback's reliance on the June 9, 2004 Order was "misplaced as that Order was vacated and reversed by the Supreme Court of Virginia." (A89).  This is plainly incorrect.  If the Virginia Supreme Court had "vacated and reversed" the 2004 Order, then Mr. Hanback's obligation to go to closing and sell his land would also be undone.  He would still be the owner of the property.

pleading), and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted). This appeal is thus reduced to the single question of whether Mr. Hanback's complaint in this case meets these standards – because if it does, the District Court erred in granting Horton's Rule 12(b)(6) Motion to Dismiss.

In failing to actually review the factual allegations and claims for relief in the light most favorable to Mr. Hanback, the District Court erred. The District Court further erred in granting Horton's motion to dismiss, because Mr. Hanback adequately alleged valid claims for declaratory relief and breach of contract.

## **ARGUMENT**

### I.    **Standard of Review**

The Fourth Circuit reviews Rule 12(b)(6) dismissals under a *de novo* standard. *United States ex rel. Nathan v. Takeda Pharms. N. America, Inc*., 707 F.3d 451, 455 (2013). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009). The plausibility standard requires a plaintiff to demonstrate at least "a sheer possibility that a defendant has acted unlawfully." *Id.* It requires the plaintiff to articulate facts, when accepted as true, that "show" that the plaintiff has stated a claim entitling him to relief, i.e., the "plausibility of 'entitlement to relief.'" *Id.* All "reasonable inference[s]" should be drawn in favor of the

plaintiff. *Id.* Consequently, "a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint to determine whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007).

The complaint must be liberally construed, with the benefit of all proper inferences being given to the plaintiff. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90, 96 (1974); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L. Ed. 2d 80, 84-85 (1957); Fed. R. Civ. Proc. Rule 8(f). Not every essential fact need be set down in the pleadings: it is sufficient if a fair reading of the complaint provides sufficient notice of the claim and its scope. *Id.*

## II.     **The District Court Failed to View the Allegations in the Light Most Favorable to Mr. Hanback**

In reviewing a Rule 12(b)(6) motion, the standard requires that all well pleaded allegations of the complaint **must be taken as true**. *Cruz v. Beto*, 405

U.S. 319, 92 S. Ct. 1079, 31 L. Ed. 2d 263 (1972); *Walker Proc. Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 86 S. Ct. 347, 15 L. Ed. 2d 247 (1965).

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) only determines whether the plaintiff has properly stated a claim; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Rule 12(b)(6) does "not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corporation v. Twombly*, 550 U.S. 544, 570 (2007). Consequently, "a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (U.S. 2009)

Here, in its opinion, the District Court chose to read the facts in the light **least favorable** to Mr. Hanback. For example, despite the Complaint's facts and claims indicating clearly that the declaratory relief sought by Mr. Hanback was a declaration of the rights of the parties in **the 2004 decree**, the District Court read the facts and claims as requesting declaratory relief regarding the 2000 contract instead. (A83-85).

The District Court's reliance on the 2000 Contract lead it to incorrectly dismiss the declaratory relief claim under the misguided notion that the declaratory claim was based on a contract – the same contract that serves as the basis of Mr.

Hanback's breach of contract claim.  Based on that reliance the District Court noted that, "when a breach of contract has already occurred and damages have already accrued … it follows that a declaratory judgment is inappropriate and unwarranted."  By reading the facts and claims as relying on the Court to interpret and declare the parties rights under the 2000 contract, instead of the 2004 decree, the District Court fundamentally erred.

In considering the breach of contract claim, the District Court again read the facts in an unfavorable way by relying on the spring 2007 redevelopment request as one in the same as the subdivision plans.  (A85-87).  The District Court relied on this misreading of the facts to find that the statute of limitations had run on Mr. Hanback's breach of contract claim.  *Id.*

However, the facts as plead by Mr. Hanback are that both the 2004 decree and the 2000 Contract both refer to the actual submission of **subdivision plans**, not the filing or approval of a zoning case.[4]  Contrary to the District Court's finding that the contract makes no mention of the apporvla of subdivision plans (A86-87), the 2000 Contract in Paragraph 6 states that the "settlement shall take place within thirty days after approval of **<u>final subdivision plans</u>** by the City of Fairfax ….

---

[4] Quite frequently, a developer will submit a request and receive a rezoning only to never actually file a subdivision plan, because the market has changed or it can't obtain financing.  Indeed, nearly three years elapsed before the subdivision plans were filed in this case.

subject to the provisions of paragraph 15 of this Contract." Moreover, Paragraph 15(A)(4) specifically notes that the obligation for DRHI to purchase the Property is "expressly subject to and contingent upon Purchaser having obtained the City of Fairfax's … final and unappealable approval of Purchaser's **final subdivision plans**." (A18, 23).

This language was tracked by Judge Klein in the 2004 decree requiring additional payment to Mr. Hanback "at the time **any subdivision plans** … are approved by the City of Fairfax." (A32-33). It is clear that the triggering event of an obligation for either party has always been tied to subdivision plan approval, and not any other approval or plan. The approval of the new community was based upon the proffers by D.R. Horton regarding Mr. Hanback's land. However, until the subdivision plans were submitted and approved, the redevelopment authorization was a general authorization.

The specific language of the 2000 contract and the 2004 decree required not just a general authorization; rather, they insist that obligations are based on the approval of subdivision plans. By reading the facts as relying on the 2007 redevelopment request, instead of the January 2010 subdivision plan approval, the District Court erred.

These errors by the District Court are fatal. The complaint must be liberally construed, with the benefit of all proper inferences to the non-moving party.

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S. Ct. 1683, 1686, 40 L. Ed. 2d 90, 96 (1974); *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102, 2 L. Ed. 2d 80, 84-85 (1957); Fed. R. Civ. Proc. Rule 8(f).  Not every essential fact need be set down: it is sufficient if a fair reading of the complaint provides sufficient notice of the claim and its scope.  *Id.*

A Rule 12(b)(6) motion to dismiss "should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief."  *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (1993).  In considering the motion, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff."  *Id.* at 1134.

Here, the District Court failed to do so.  Taken as true, Mr. Hanback has alleged a set of facts – the parties' 2004 obligations, the 2007 rezoning, the 2010 subdivision – which show the importance of declaratory relief in understanding the 2004 decree, yet the trial court completely missed the significance of Mr. Hanbacks's allegations and found every inference against him.

## III.   The District Court erred when it dismissed Count I for Declaratory Judgment because Mr. Hanback seeks declaratory relief regarding the 2004 decree not the 2000 contract

Mr. Hanback initially brought this suit in state court seeking a declaration pursuant to Virginia Code § 8.01-184.  The defendants removed this suit from state

court to federal court. Both the federal Declaratory Judgment Act, 28 U.S.C. § 2201, and Virginia Code § 8.01-184 are procedural; they do not create or change any substantive rights. *Skelly Oil Co. v. Phillips Petroleum*, 339 U.S. 667, 671, 94 L. Ed. 1194, 70 S. Ct. 876 (1950). Thus, the Fourth Circuit treats state court declaratory judgments that are removed to federal court as invoking the Federal Declaratory Judgment Act, 28 U.S.C. § 2201. *Hartford Fire Ins. Co. v. Harleysville Mut. Ins. Co.*, 736 F.3d 255, 261 n.3 (4th Cir. 2013) (citing *Jones v. Sears Roebuck & Co.*, 301 F. App'x 276, 281 n.12 (4th Cir. 2008)).

In relevant part, 28 U.S.C. § 2201(a) provides: "In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration whether further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such." A federal court may exercise its jurisdiction in a declaratory judgment proceeding where "the complaint alleges an actual controversy between the parties of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 592 (4th Cir. 2004) (internal quotation marks omitted).

In order to satisfy this requirement, a plaintiff must possess standing to sue, meaning that a claim should present a "controversy that qualifies as an actual controversy under Article III of the Constitution." *Id.* Standing encompasses three components: "(1) the plaintiff must allege that he or she suffered an actual or threatened injury that is not conjectural or hypothetical, (2) the injury must be fairly traceable to the challenged conduct, and (3) a favorable decision must be likely to redress the injury." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

Moreover, a declaratory judgment "is appropriate when the judgment will serve a useful purpose of clarifying and  settling the legal relations in issue, and when it will terminate and afford relief from uncertainty, insecurity, and controversy giving rise to the proceeding," *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 412 (4th Cir. 2004).

Here, Mr. Hanback is seeking a determination of his rights under the 2004 decree. That order required Mr. Hanback to specifically perform and sell his land to Horton, but continued that:

> "… at the time of settlement, DRHI, Inc. shall pay Mr. Hanback $400,000 minus the $10,000 already paid and … at the time any subdivision plans are submitted by DRHI, Inc. for the development of the property sold by Mr. Hanback are approved by the City of Fairfax, in the event that the plans submitted by DRHI, Inc. permit the construction of six or more individual residences, DRHI, Inc. shall

17

pay to Mr. Hanback $70,000.00 for the sixth lot and $70,000.00 for each additional approved lot thereafter."

Mr. Hanback maintains that his former land "permit(ed) the construction" of 10 residences and seeks payment for that additional density. The Defendants however have denied repeatedly that they owe any sum to Mr. Hanback. The parties are adverse and this Court may make an adjudication of the rights and declare the obligations of the parties under the 2004 decree.

Mr. Hanback's 2013 attempt to enforce the 2004 decree with a "show cause" was unsuccessful because the contempt finding was vacated by the Supreme Court of Virginia. That Court found that "no finite amount of damages was identified. The additional amount DRHI might owe to Hanback was left open was depend on numerous factors which had not occurred as of June 9, 2004." *DRHI, Inc. v. Hanback*, at 13. The Supreme Court continued, the "June 9 2004 order left unresolved any issues surrounding DRHI's future failure to pay and any consequent damages." *Id.*

Essentially the holding of the Supreme Court was that because the June 9, 2004 order did not contain definite terms as to the total amount DRHI was required to pay and when such payment was due, DRHI could not be held in contempt for failing to comply with the June 9, 2004 order. Essentially Mr. Hanback's petition for the court to hold DRHI in contempt was premature, because the amount owed to Mr. Hanback, if anything, was not certain. In bringing this current declaratory

18

action Mr. Hanback sought to put the proverbial horse back in front of the cart and have the Court declare the remaining rights and obligations, if any, of the parties under the 2004 decree.

In this case there is a presently justiciable controversy as to whether the Defendants owed the Plaintiff, Mr. Hanback, any sum of money for the bonus density or build-out of houses on his land. This matter clearly presents a distinct and ripe controversy as to the relative rights and duties under the 2004 decree.

The District Court had the power to declare what "the rights and other legal relations" are under the decree and dismissed the action instead. However, in its opinion, the District Court dismissed Mr. Hanback's claim for declaratory relief based on the mistaken assumption that it was interpreting a contract. As discussed *supra*, and specifically noted in the Complaint at paragraph 31, Mr. Hanback's claim for declaratory relief is based on the 2004 Decree not the 2000 Contract. The fact that Mr. Hanback also brought a claim for breach of contract is irrelevant, as "[t]he existence of another adequate remedy does not preclude a declaratory judgment that is otherwise appropriate." Fed. R. Civ. P. 57 as cited by *Kersey v. PHH Mortg. Corp.*, 682 F. Supp. 2d 588, 591-592 (E.D. Va. 2010).

Mr. Hanback's suit does not call for an advisory opinion. A declaratory judgment is appropriate and in the public interest if it serves a useful purpose in clarifying and settling the legal relations at issue, and it will terminate and afford

relief from the uncertainty, insecurity, and controversy giving rise to the long line of proceedings between these parties. Here, Mr. Hanback is entitled to a declaration of his rights under the 2004 Decree and an order clarifying, what, if any, payment he is entitled to for the five additional lots given to Horton by the City of Fairfax in exchange for the buffer park land consisting entirely of the land sold to Horton by Hanback.

Moreover, contrary to the District Court's opinion, Mr. Hanback's Rule to Show Cause and the subsequent dismissal of the contempt by the Supreme Court of Virginia in 2014 are not bars to the current claims as discussed *supra*. In the previous action, Mr. Hanback proceeded in an attempt to enforce a 2004 decree with a summary contempt action. The Supreme Court ruled that obligations of the parties under the 2004 decree were not clear. The very purpose of the current action is to definitively identify and clarify those obligations.

## IV.    Mr. Hanback's breach of contract claim falls within the statute of limitations

Sitting in diversity, this Court is to apply Virginia substantive law. *Erie Railroad v. Tompkins*, 304 U.S. 64, 78, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); *Castillo v. Emergency Medical Associates*, 372 F.3d 643, 646 (4th Cir. 2004). This includes the Virginia statute of limitations. Contrary to the Defendants' position, Mr. Hanback's contract action is within the statute of limitations. Under Code of Virginia § 8.01-230 which governs the accrual of rights of action, "[i]n every

action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run **from the date the injury is sustained**."

The statute of limitations for breach of a written contract is five years. Va. Code § 8.01-246(2). A claim for breach of contract accrues at the time of the breach. *Locke v. Johns-Manville Corp.*, 221 Va. 951, 959, 275 S.E.2d 900 (Va. 1981); *see also Hunter v. Custom Bus. Graphics*, 635 F. Supp. 2d 420, 431 (E.D. Va. 2009) (citing Va. Code § 8.01-230).

Here, as discussed *supra*, the right of action accrued and the prescribed limitation period of five years began to run from the date of the injury, **January 8, 2010**. This was the date the City of Fairfax approved the subdivision plans submitted by the Defendants. On that date, Mr. Hanback's additional right to payment accrued and Defendants' failure to pay constitutes a breach.

The fact that the contract was signed in 2000 is immaterial. The contract presumed a payment based on the number of lots approved once **subdivision plans** were approved by the city.[5] The fact that the approval of the subdivision plans did not come from the City of Fairfax until 2010 does not absolve the defendants' from

---

[5] Paragraph 6 of the Contract references the "approval of **final subdivision plans** by the City of Fairfax." Paragraph 15(A)(4) specifically notes that the obligation for DRHI to purchase the Property is "expressly subject to and contingent upon Purchaser having obtained the City of Fairfax's … final and unappealable approval of Purchaser's **final subdivision plans**."

compensating Mr. Hanback. The failure by Horton to compensate Mr. Hanback, constitutes a breach which gives rise to this action. The District Court erred by dismissing the breach of contract claim based on the statute of limitations and it's incorrect reliance on rezoning applications instead of subdivision plan approval.

**V.    Mr. Hanback stated a contract claim upon which relief can be granted**

Mr. Hanback alleged a breach of the contract between the parties and the defendant/appellees filed a Rule 12(b)(6) Motion to Dismiss for "failure to state a claim." However, the detailed and precise contractual claims outlined in the Complaint are sufficient to pass the *Iqbal* standard. Under *Iqbal*, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Stevenson v. City of Seat Pleasant*, 2014 U.S. App. LEXIS 3275 *14-15 (4th Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009); see also *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955 (2007) ("[W]e do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face.").

In the Complaint, Mr. Hanback alleged an underlying count for breach of the Contract at issue in this case. In Virginia, a breach of contract exists where there is "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the

plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004) (citing *Brown v. Harms*, 251 Va. 301, 306, 467 S.E.2d 805, 807 (1996)).

Mr. Hanback alleged facts sufficient to state the cause. First, he alleged that he had a legally enforceable contract DRHI, which was eventually assigned to D.R. Horton. Compl. at ¶¶ 34-35. Second, he alleged that the Defendants violated their obligations under that contract, when it failed to make additional payment for the extra approved lots, which DRHI could build as a result of the Hanback land. Compl. ¶¶ 36-38, 63-65. Third, Mr. Hanback alleged that he was damaged as a result of the Defendants' breach. Compl. ¶¶ 40-41.

While the District Court is correct that there is no mention of "bonus density" in the contract, the 2000 Contract clearly contemplated payment to Mr. Hanback based on the number of residential units Horton would be able to build. The original contract stated a contract price of $560,000.00, "which is equal to Seventy Thousand ($70,000.00) per each of the approved eight (8) lots. (A16). The amendment added the following, "However the Purchase Price for the Property shall be $70,000.00 per approved lot with a minimum of 6 lots. If only 5 or fewer than 5 lots are approved, the Purchase Price shall be $400,000.00 for the 2.14 acres." (A30). Importantly, at that time the closing took place as a result of the

23

2004 decree, no approval had been given by the city.[6]  Eventually, the city did approve development and a subdivision plan.  (A12).  The approval allowed for 15 lots on the assemblage, 10 of which are either built directly on Hanback's land, or the approval to build them came from a direct swap of Hanback's land for a city buffer zone.  *See supra.*

While the parties certainly did not specifically address bonus density in the 2000 contract, they clearly expressed that payment was based on the number of lots "permitted" and/or "approved."  (A16-31).  Mr. Hanback has alleged facts indicating that his former property allowed for the approval of ten (10) lots, yet he was only compensated for five (5) of them.  (A14-15).  As such, per the contract amendment, Mr. Hanback is entitled to "$70,000.00 per approved lot," and the district court erred in dismissing the breach of contract claim at this early stage for failure to state an adequate claim, when the contract clearly called for payment to be based on the number of approved lots.

## <u>CONCLUSION</u>

For all of the above reasons, and for such other and further reasons as may be apparent to this Court, Plaintiff/Appellant Mr. Hanback requests this Court reverse the decision of the District Court dismissing his Complaint.

---

[6] It is for this very reason – the City had not yet approved a subdivision plan – that Judge Klein's 2004 decree outlined future payment to Mr. Hanback when that plan was approved.

24

## REQUEST FOR ORAL ARGUMENT

Mr. Hanback requests oral argument. This appeal is not frivolous and the Court's decisional process would be aided by oral argument.

WILLIAM HANBACK
By Counsel

/s/ J. Chapman Petersen
J. Chapman Petersen, Esq., VSB #37225
Stephen Patrick Pierce, Esq., VSB #84999
Surovell Isaacs Petersen & Levy PLC
4010 University Drive, 2nd Floor
Fairfax, VA 22030
Telephone: 703-251-5400
Facsimile: 703-591-9285
jpetersen@siplfirm.com
spierce@siplfirm.com

# <u>CERTIFICATE OF COMPLIANCE</u>

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

    [ X ] this brief contains [*5,936*] words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

    [    ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    [ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

    [    ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: June 22, 2015                         /s/ J. Chapman Petersen
                                             *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 22nd day of June, 2015, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

> Jon F. Mains
> JON F. MAINS & ASSOCIATES
> 3955 Chain Bridge Road, 2nd Floor
> Fairfax, Virginia  22030
> (703) 273-2005
>
> *Counsel for Appellees*

I further certify that on this 22nd day of June, 2015, I caused the required copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court.

/s/ J. Chapman Petersen

*Counsel for Appellant*
